IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

COLUMBIA GAS TRANSMISSION, LLC,

        Plaintiff,

v.                              CIVIL ACTION NO.   2:23-cv-00646

EASEMENT RIGHTS ON REAL PROPERTY
LOCATED IN KANAWHA COUNTY, WEST VIRGINIA
IDENTIFIED IN DEED BOOK 1210, PAGE 253, AND
REFERENCED MORE SPECIFICALLY AS
PARCEL IDENTIFICATION NOS. 20-03-0008-0001-0000, et al.,

        Defendants.

MEMORANDUM OPINION AND ORDER

Pending before the Court are Plaintiff Columbia Gas Transmission, LLC's ("Plaintiff" or "Columbia") Motion for Partial Summary Judgment, [ECF No. 5], Plaintiff's Motion for Preliminary Injunction Seeking Immediate Possession, [ECF No. 7], and Defendants ACIN, LLC ("ACIN"), Amherst Industries, Inc. ("Amherst"), Elite Materials, LLC ("Elite Materials"), Investment Management Group, LLC ("IMG"), and Point Lick Energy, LLC's ("Point Lick Energy") (collectively "Defendants") Motion for Partial Summary Judgment, [ECF No. 21]. The Court held a hearing on the preliminary injunction on October 31, 2023. Because all of the motions raise substantially similar arguments, I will dispose of them together. For the foregoing reasons, Plaintiff's Motion for Patrial Summary Judgment, [ECF No.

5], is **GRANTED**, Plaintiff's Motion for Preliminary Injunction Seeking Immediate Possession, [ECF No. 7], is **DENIED**, and Defendants' Motion for Partial Summary Judgment [ECF No. 21], is **DENIED**.

## I.    Background

Columbia is an interstate natural gas company whose predecessor in 1910 acquired an oil and gas lease on a large tract of 5,000 acres ("the Property") owned by Defendant Amherst's predecessor. [ECF No. 22, at 1]. Pursuant to a Federal Energy Regulatory Commission ("FERC") certificate, Columbia operates the SM-88 Pipeline, which is an interstate natural gas transmission pipeline. [ECF No. 1, ¶ 7; ECF No. 22, at 1–2]. SM-88 Pipeline's route crosses real property identified in Deed Book 1210, Page 253 as recorded in the land records of Kanawha County, West Virginia. [ECF No. 1, ¶ 8].

In 1956, Amherst's predecessor granted a right-of-way ("the 1956 Right-of-Way") to Columbia's predecessor for the SM-88 Pipeline. *Id.* ¶ 18; [ECF No. 1-4]. The 1956 Right-of-Way included a provision that allowed for Amherst to request relocation of the pipeline "[i]f and whenever the location or relocation of [the pipeline] . . . is found in the opinion of [Amherst] to interfere with or impair the value, use or efficient development by Amherst of its lands for mining." [ECF No. 1-4, ¶ 3].

The parties modified the original right-of-way agreement in 1966, [ECF No. 1-5], in 1979, [ECF No. 1-6], and in 1981, [ECF No. 1-7]. The 1966 agreement changed the relocation obligation to provide that either party could relocate the SM-88 Pipeline to prevent its damage if the coal mining operations were to come into

proximity of the pipeline. [ECF No. 1-5 ¶ 2]. Both the 1979 agreement and the 1981 agreement ("the 1981 Supplemental Agreement") granted Columbia an expansion of rights that allowed for ingress and egress to a proposed gas site, the operation of a major gas separation facility on the property, and the production of carbon dioxide.[1] [ECF No. 1, ¶¶ 18–22; ECF No. 22, at 2]. Amherst (now ACIN)[2] purportedly agreed to this expansion of rights because the supplemental agreements included an "agreement that Columbia must (i) relocate any pipeline in case of interference with coal development, and (ii) fully compensate for any 'economic losses' occasioned by the existence of any of the pipelines on the Amherst Property." [ECF No. 22, at 2]. The Supplemental Agreement provides that if Amherst/ACIN "in writing request[s] relocation of said lines, [Columbia] shall relocate the same, or such part thereof as may be requested . . . . [Amherst/ACIN] shall furnish, at no expense to [Columbia], a reasonably suitable right of way or easement for such relocation." [ECF No. 1-7, at 8].[3] Thus, the agreement requires Defendants to provide Columbia with a "reasonably suitable" right-of-way or easement as a condition precedent for relocation of the SM-88 Pipeline. Nothing in the any of the agreements allows for termination of Columbia's "vested and permanent interest" in the Property. [ECF No. 22, at 7].

---

[1] The CO2 pipeline is now owned by Diversified Production, LLC.

[2] The parties have changed since the original agreements. *See* [ECF No. 22, at 7]. Defendants, in its motion for summary judgment explain that Defendant Amherst has the right to the timber on the property. *Id.* Defendant ACIN is now the lessee of the coal with the rights under the 1956 Right-of-Way as amended. *Id.* Defendant IMG is the coal sublessee. *Id.* Defendant Point Lick Energy is the operator and holds mining permits. *Id.* Defendant Elite Materials is the sublessee for stone harvested in connection with the coal mining. *Id.*

[3] Unless otherwise stated, the page numbers of the exhibits correspond with the page numbers in CM/ECF.

The present dispute began in April of 2021, when Defendants notified Columbia that the SM-88 Pipeline must move elsewhere on the Property to accommodate mining operations. [ECF No. 1 ¶ 23; ECF No. 22, at 7]. On January 5, 2022, Defendants emailed Plaintiff with a map containing Defendants' mining plans, [ECF No. 21-9], and one month later, sent another map containing a proposed route for the relocation of the pipeline, [ECF No. 21-10]. Email exchanges throughout 2022 contemplated that mining would begin to occur near the pipeline beginning in September 2023. [ECF No. 21-11, at 2].

On January 3, 2023, Defendant ACIN sent a letter to Columbia demanding the relocation of the SM-88 Pipeline as required by the prior agreements between the parties. [ECF No. 22-13, at 2]. Again, it provided a map containing the proposed relocation. *Id.* On the same day, Columbia sent a letter offering to pay Defendants Point Lick Energy and ACIN "a one-time aggregate total of $2,943,131, which amount equals the appraised value of, and represents full payment for, the Proposed Coal Area." [ECF No. 22-14, at 1]. It then continued on to explain that "Columbia is prepared to proceed with a condemnation lawsuit to acquire the Proposed Coal Area." *Id.*

Defendants, in response to the letter, filed a civil action in state court on January 31, 2023. *See* [ECF No. 21-15]. In that action, ACIN, IMG, Point Lick Energy, Elite Materials, and Amherst sued Columbia seeking (1) injunctive relief requiring Columbia to comply with its relocation obligation pursuant to the previous agreements; (2) declaratory relief establishing that Columbia breached its obligations

4

under the previous agreements; and (3) lost profits and monetary damages in the event the pipeline is not relocated. *Id.* ¶¶ 39–57. The parties stipulated ten extensions of time for Columbia to answer the complaint due to ongoing settlement discussions. [ECF No. 22, at 9].

Columbia then brought the present action under the Natural Gas Act on September 28, 2023. *See* [ECF. No. 1]. It answered the state court complaint a day later, and on October 5, 2023, moved to stay the state court proceedings pending resolution in federal court. [ECF No. 22, at 10 (citing ECF No. 21-16)]. Columbia asserted that this present action "will ultimately moot this action and extinguish the rights that Plaintiffs seek to enforce." [ECF No. 21-17, at 1].

Columbia then filed the present motion for partial summary judgment and motion for a preliminary injunction granting immediate possession. [ECF Nos. 5, 7]. Columbia requests summary judgment, seeking a permanent easement that includes the following rights: (1) keeping the SM-88 Pipeline in its current location; (2) extending the right-of-with from thirty to fifty feet; (3) subjacent support within and under the fifty-foot right of way; and (4) a buffer zone of 310 feet where no blasting may occur (together "Permanent Easement"). [ECF No. 6, at 4]. Defendants filed their own motion for partial summary judgment on October 24, 2023, seeking a declaration that Plaintiff has no right to condemn an easement to the extent that Plaintiff already has an existing permanent easement and that the Natural Gas Act does not alter Plaintiff's contractual obligations. [ECF No. 21]. The motions have been fully briefed, and this Court held a hearing on the preliminary injunction on October 31, 2023. At

5

the hearing, the parties asked the Court to hold the matter in abeyance pending mediation. The matter is now ripe for review.

## II.    The Natural Gas Act

This action is brought pursuant to the Natural Gas Act ("NGA" or "the Act"), which allows natural gas companies to acquire property by eminent domain. *See* 15 U.S.C. § 717 *et seq.* A natural gas company is "a person engaged in the transportation of natural gas in interstate commerce, or the sale in interstate commerce of such gas for resale." *Id.* § 717(a)(6). "Such companies may build and operate new pipelines only after obtaining a certificate of public convenience and necessity ('Certificate') from the Federal Energy Regulatory Commission ('FERC' or 'the Commission')." *Dominion Energy Transmission, Inc. v. 0.11 Acres of Land, More or Less, in Doddridge Cnty., W. Va.*, No. 1:19CV182, 2019 WL 4781872, at *1 (N.D. W. Va. Sept. 30, 2019). "Once FERC has issued a certificate, the NGA empowers the certificate holder to exercise 'the right of eminent domain' over any lands needed for the project." *Id.* (quoting *E. Tenn. Nat. Gas Co. v. Sage*, 361 F.3d 808, 818 (4th Cir. 2004)). The Act provides:

> When any holder of a certificate of public convenience and necessity cannot acquire by contract, or is unable to agree with the owner of property to the compensation to be paid for, the necessary right-of-way to construct, operate, and maintain a pipe line or pipe lines for the transportation of natural gas . . . it may acquire the same by the exercise of the right of eminent domain in the district court of the United States for the district in which such property may be located.

15 U.S.C. § 717f(h). A district court has proper jurisdiction so long as "the amount claimed by the owner of the property to be condemned exceeds $3,000." *Id.*

6

There are three essential prerequisites that the natural gas company must establish in order to exercise the power of eminent domain under the NGA: "(a) It is a holder of a certificate of public convenience and necessity; (b) It needs to acquire an easement, right-of-way, land or other property necessary to the operation of its pipeline system; and (c) It has been unable to acquire the necessary property interest from the owner." *Dominion Energy Transmission, Inc.*, 2019 WL 4781872, at *2 (quoting *Rover Pipeline LLC v. Rover Tract No(s) WV-DO-SHB-011.510-ROW-T & WV-DO-SHB-013.000-ROW-T*, No. 1:17CV18, 2017 WL 5589163, at *2 (N.D. W. Va. Mar. 7, 2017)).

After a district court determines that the natural gas company satisfies the three prerequisites and has the power to condemn under the NGA, the court may then use its equitable power to grant possession to the company through a preliminary injunction. *Sage*, 361 F.3d at 828. This allows the company to take immediate possession pending the determination of just compensation. *See id.* Columbia now hopes to utilize this process to acquire the Permanent Easement.

III.  **Cross-Motions for Partial Summary Judgment**

a.  **The Cross-Motions**

Columbia seeks to acquire additional easement rights for the continued operation and maintenance of the pipeline. Columbia explains that, in its demand for the relocation of the pipeline, ACIN invoked a relocation clause "that was originally agreed upon in the 1950s." [ECF No. 6, at 2]. The relocation clause provides that ACIN must furnish Columbia with a new right-of-way that is in a reasonably suitable

7

location, and Columbia argues that "ACIN has not furnished Columbia with a new right-of-way agreement" nor has it "proposed a new right-of-way location that is reasonably suitable." *Id.* As such, Columbia argues it has no obligation to relocate. *Id.*

Furthermore, Columbia states that, as a result of ACIN's mining preparations, it was forced to evaluate the rights it needs in order to continue to operate and maintain the pipeline. *Id.* Columbia is seeking the Permanent Easement to keep SM-88 Pipeline in its current location; extend the right-of-way from thirty to fifty feet; obtain subjacent support within and under the fifty-foot right-of-way; and create a buffer zone of 310 feet where no blasting may occur. *Id.* at 4. Columbia asserts that it has made various offers before filing this action, but that the parties have been unable to come to an agreement on the amount of compensation. As such, it "seeks to acquire the Permanent Easement by eminent domain." *Id.*

Defendants vehemently disagree with Columbia's position and argue that Columbia is simply attempting to "renege on contract terms it does not like," and that it is "not entitled to condemn a new superseding easement." [ECF No. 20, at 1]. Defendants allege that the 1981 Supplemental Agreement has allowed Columbia to enjoy "the benefits of the bargain" via the construction of a new CO2 plant on the Property, but "Columbia cannot condemn its way out [of] contract obligations under [the previous] agreements now that Defendants' rights have come due." *Id.* at 5–6. Further, Defendants assert that "Columbia never once articulated to Defendants that its 2022 relocation pathway was unacceptable" until the filing of this suit. *Id.* at 4.

In any event, Defendants argue that Columbia is not entitled to summary judgment for two reasons. First, as to keeping the SM-88 Pipeline in its current location, Defendants assert that the NGA does not apply because Columbia has already acquired a permanent easement by contract. *Id.* at 7. Second, as to rights two, three, and four of the proposed Permanent Easement, Defendants allege genuine disputes of material fact exist that preclude summary judgment. There is—according to Defendants—an issue of fact as to "whether Columbia has a need to keep the SM-88 in its current location" because Columbia only "now suggests for the first time that there is NO alternative course that will work."[4] *Id.* at 8. Defendants assert that Columbia's experts, which it relied on in its motion for summary judgment, have not explained which alternative routes were considered or why an alternative placement would be inadequate. *Id.* at 8–9. Columbia engineer, Timothy "Jacob" Parsons, concluded that the pipeline "now needs more width than it has ever needed before," but Defendants state that the affidavit—being self-serving, conclusory, and not subject to cross-examination—is "entitled no credence given Defendants' prior (unanswered) efforts to identify relocation routes." *Id.* at 9. Defendants then explain that if they cannot find a reasonably suitable alternative, then the conditions

---

[4] In their later filings, Defendants explain that although their contract contemplated moving the pipeline after locating a reasonably suitable right of way, "it is now too late to move the pipeline as mining operations have been adjusted to accommodate the pipeline in its current location." [ECF No. 45, at 3]. Therefore, "there is no dispute or controversy that Columbia's pipeline can remain in the same location it has been for 67 years." *Id.* at 2. This is in contradiction to Defendants' previous position that "there may be a factual question as to whether a 'reasonably suitable' alternative [right-of-way] exists." [ECF No. 22, at 12]. I will discuss this further below.

9

precedent are not met, and the SM-88 Pipeline will not be moved, which extinguishes the need for the Permanent Easement. *Id.*

Moreover, Defendants assert that Columbia does not provide any support for the conclusion that it is necessary to expand the right-of-way an additional ten feet on either side of the pipeline for a total of fifty feet. *Id.* at 10. As to the subjacent support, Defendants state that they have no plan to interfere with the pipeline's subjacent support area because they do not have deep mining rights and, under current surface mining regulations, no operations can occur within 300 feet of the pipeline. *Id.* at 10–11. Because of this, they argue that Columbia is "presum[ing] unlawful and illegal conduct by Defendants without any substantiation whatsoever." *Id.* Finally, Defendants hold permits issued by and are subject to the regulations of the West Virginia Department of Environmental Protection ("WVDEP"), which currently restricts blasting "not just 310 feet around a [pipeline], but within 600 feet." *Id.* at 11. Defendants argue that because the controlling regulations are "already more restrictive than the 'rights' Columbia seeks to condemn," there is no need to condemn the blasting radius. *Id.* at 11–12.

Defendants therefore move for summary judgment on two issues: (1) that "Columbia has no right to condemn an easement to the extent it has an existing permanent easement;" and (2) that the NGA and condemnation rights do not alter any of Columbia's contractual obligations under the 1981 Supplemental Agreement. [ECF No. 22, at 3].

10

### b. Legal Standard

To obtain summary judgment, the moving party must show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). "Facts are 'material' when they might affect the outcome of the case, and a 'genuine issue' exists when the evidence would allow a reasonable jury to return a verdict for the nonmoving party." *News & Observer Publ. Co. v. Raleigh–Durham Airport Auth.*, 597 F.3d 570, 576 (4th Cir. 2010). The moving party may meet its burden of showing that no genuine issue of material fact exists through the use of "depositions, answers to interrogatories, answers to requests for admission, and various documents submitted under request for production." *Barwick v. Celotex Corp.*, 736 F.2d 946, 958 (4th Cir. 1984). In considering a motion for summary judgment, the court will not "weigh the evidence and determine the truth of the matter." *Anderson v. Liberty Lobby*, 477 U.S. 242, 249 (1986). Rather, the court will draw any permissible inference from the underlying facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587–88 (1986).

"When faced with cross-motions for summary judgment, the court must review each motion separately on its own merits to determine whether either of the parties deserves judgment as a matter of law." *Rossignol v. Voorhaar*, 316 F.3d 516, 523 (4th Cir. 2003) (internal quotation omitted). "When considering each individual motion, the court must take care to resolve all factual disputes and any competing, rational

inferences in the light most favorable to the party opposing that motion." *Id.* (internal quotation omitted).

### c. Analysis – Plaintiff's Motion for Summary Judgment

When a gas company requests immediate possession to condemn, "the company's motion for immediate possession triggers a threshold requirement. The district court must [first] determine that the company has the right to condemn the property in question." *E. Tenn. Nat. Gas Co. v. Sage*, 361 F.3d 808, 825 (4th Cir. 2004). As stated, a natural gas company must make three findings to show it is entitled to exercise the power of eminent domain under the NGA: "(a) It is a holder of a certificate of public convenience and necessity; (b) It needs to acquire an easement, right-of-way, land or other property necessary to the operation of its pipeline system; and (c) It has been unable to acquire the necessary property interest from the owner." *Dominion Energy Transmission, Inc. v. 0.11 Acres of Land, More or Less, in Doddridge Cnty., W. Va.*, No. 1:19CV182, 2019 WL 4781872, at *2 (N.D. W. Va. Sept. 30, 2019) (quoting *Rover Pipeline LLC v. Rover Tract No(s) WV-DO-SHB-011.510-ROW-T & WV-DO-SHB-013.000-ROW-T*, No. 1:17CV18, 2017 WL 5589163, at *2 (N.D. W. Va. Mar. 7, 2017)). I will address each element in turn.

### 1. The FERC Certificate

First, Columbia is an interstate natural gas company, as defined by 15 U.S.C. § 717a(6), and it holds a certificate of public convenience and necessity for the SM-88 Pipeline. [ECF No. 5-1]; *United Fuel Gas Co.*, 16 F.P.C. 978 (F.P.C. 1956). This is undisputed, and to the extent that Defendants attempt to challenge the FERC

certificate, *see* [ECF No. 20, at 6], such challenge is not appropriate here. *See Mountain Valley Pipeline, LLC v. 6.56 Acres of Land, Owned by Sandra Townes Powell*, 915 F.3d 197, 213 (4th Cir. 2019) (explaining how "condemnation proceedings may not be used to mount a collateral attack" on a FERC certificate).

### 2. Necessity

Second, Columbia must prove that the Permanent Easement is necessary for the continued operation and maintenance of the pipeline. Natural gas companies are typically afforded broad discretion in determining whether it is necessary to condemn, which includes wide latitude in choosing the route of the pipeline. *Equitrans, L.P. v. 0.56 Acres More or Less of Permanent Easement Located in Marion Cnty., W. Va*, 145 F. Supp. 3d 622, 627 (N.D. W. Va. 2015); *see also Mountain Valley Pipeline, LLC v. W. Pocahontas Properties Ltd. P'ship*, 918 F.3d 353, 363 (4th Cir. 2019) ("[A] gas company authorized by FERC to exercise eminent domain has the discretion to determine the size of the easements it needs to take . . .") (internal quotations omitted); *Williams v. Transcon. Gas Pipe Line Corp.*, 89 F. Supp. 485, 489 (W.D.S.C. 1950) ("A broad discretion is necessarily vested in those to whom the power of eminent domain is delegated, in determining what property is necessary for the public purpose, with respect to the particular route, line[,] or location of the proposed work or improvement."). A Plaintiff only needs to show "that the easements it seeks align with the FERC-approved route." *Atl. Coast Pipeline, LLC v. 0.25 Acre, More or Less, in Northampton Cnty., N.C.*, No. 2:18-CV-3-BO, 2018 WL 1369933, at *4 (E.D.N.C. Mar. 16, 2018) (citation omitted).

Courts will not question the issue of necessity absent "evidence that the power to condemn has been wielded arbitrarily, abusively, or in bad faith." *Daubenmire v. Columbia Gas Transmission, LLC*, 614 F. Supp. 3d 601, 610 (S.D. Ohio 2022) (quoting *Columbia Gas Transmission Corp. v. An Exclusive Nat. Gas Storage Easement in Clinton Subterranean Geological Formation Beneath An 80 Acre Tract in Ripely Twp., Holmes Cnty., Ohio*, 688 F. Supp. 1245 (N.D. Ohio 1988)). Although "there may be cases where the condemnor so abuses its discretion or acts in such bad faith in locating its line that the courts would be justified in intervening, . . . usually no Judge would take upon himself the burden of deciding the best location for a utility line." *Williams*, 89 F. Supp. At 489. "[A] landowner may not object merely because some other location might have been made or some other property obtained which would have been suitable for the purpose." *Id.* The burden, however, is on the landowners challenging the taking to produce evidence of abuse or bad faith. *Daubenmire*, 614 F. Supp. 3d at 610.

Courts have allowed for the proffer of sworn testimony of company representatives as evidence to demonstrate necessity. *See Texas E. Transmission, LP v. 3.2 Acres Permanent Easement*, No. 2:14-CV-2650, 2015 WL 152680, at *3 (S.D. Ohio Jan. 12, 2015); *see also Transcon. Gas Pipe Line Co., LLC v. 6.04 Acres, More or Less, Over Parcel(s) of Land of Approx. 1.21 Acres, More or Less, Situated in Land Lot 1049*, 910 F.3d 1130 (11th Cir. 2018) (finding that an expert's declaration stating how the condemnation complied with FERC was sufficient to prove necessity).

14

Here, Plaintiff has shown that the four property interests it seeks to condemn in the Permanent Easement are necessary for the continued operation and maintenance of the pipeline. In support, Plaintiff has attached sworn declarations from three individuals: Integrity Engineer Dustin Osborne, P.E., [ECF No. 5-2]; Integrity Engineer Timothy "Jacob" Parsons, [ECF No. 5-3]; and Operations Manager Timothy Sweeney, [ECF No. 5-4].

The first request in the Permanent Easement is for the right to keep the pipeline in its current location. Defendants originally argued that "Columbia has no right to condemn an easement that already exists," and that there is a genuine issue of fact as to whether Columbia has a need to keep its pipeline in its current location. [ECF No. 20, at 8]. Mr. Osborne explains in his Declaration, however, that it is necessary to keep it in place because the current location is the safest route for the pipeline due to the heavily mined property. [ECF No. 5-2, ¶¶ 17–18]. Further, Mr. Parsons explains that he considered the characteristics of the pipeline and used geographic software to examine the physical conditions of the property and its terrain. [ECF No. 5-3, ¶¶ 8–9]. He declared that there is no suitable alternative right-of-way, and thus, it is necessary for the pipeline to remain in its location. *Id.* ¶ 18.

Later, however, Defendants state that their "mining operations have been adjusted to accommodate the pipeline in its current location," [ECF No. 45, at 3], and "there is no dispute or controversy that Columbia's pipeline can remain in the same location it has been for 67 years," *id.* at 2. Defendants argue that—because of this

change in position—it is now unnecessary to condemn the right to keep the pipeline in its current position because Plaintiff already has the right to keep it there.

Although the 1981 Supplemental Agreement provides Plaintiff with a permanent easement somewhere on the property, the agreement also provides that Defendants—or any successor who may at a later point have an interest in the property—can require Plaintiff or a successor to move the pipeline. Therefore, although Plaintiff has a permanent easement for the property, it is still only conditionally located where it is. And the current location of the pipeline aligns with the FERC-approved route. [ECF No. 5-1]; *see Atl. Coast Pipeline, LLC*, 2018 WL 1369933, at *4. Thus, it is necessary to condemn such right in order for the operation and maintenance of the pipeline to continue.

Next, in giving Plaintiff broad discretion in determining the size of the easement it needs to take, *see Mountain Valley Pipeline, LLC*, 918 F.3d at 363, I find that Plaintiffs have shown it is necessary to condemn the fifty-foot right of way as stated in the proposed Permanent Easement. In his sworn Declaration, Dustin Osborn, P.E., explains that it is necessary, based on current industry standards, to extend the right-of-way width by ten feet on each side. [ECF No. 5-2, ¶¶ 14, 16]. Defendants argue that Columbia does not identify the industry standard or any bases on which the fifty-foot determination was drawn, *see* [ECF No. 20, at 10], but I find the Declaration to be credible. Moreover, although not all NGA condemnation cases, other courts have agreed that a fifty-foot right-of-way for gas pipelines is the industry standard. *See Columbia Gas Transmission Corp. v. Tarbuck*, 845, F. Supp. 303, 308

n.11 (W.D. Pa. 1994) ("According to the testimony of . . . [Plaintiff's] Area Superintendent, which the court finds to be credible, the industry standard for gas pipelines is . . . a right-of-way of 50 feet in width."); *Andrews v. Columbia Gas Transmission Corp.*, 544 F.3d 618, 626 (6th Cir. 2008) (finding that the magistrate judge did not err in construing a right of way agreement as granting Columbia Gas a fifty-foot easement because it was "reasonably necessary and convenient for the inspection, operation, and maintenance of each of the pipelines"); *Columbia Gas Transmission Corp. v. Perry*, 623 F. Supp. 2d 409, 413 (S.D.N.Y. 2008) (finding that a width of fifty feet "is a necessary and reasonable width for the purpose of maintaining a pipeline" and "this width squares with what other courts have found in similar cases"); *Columbia Gas Transmission Corp. v. Adams*, 646 N.E.2d 923, 927 (Ohio 1994) (ordering Defendants to cease interference with the fifty-foot right-of-way permitted by the court). And in an order issuing a FERC Certificate to another company, the FERC Commissioners agreed with an environmental assessment which found that "a 50-foot-wide permanent [right-of-way] is typical in the industry (when space is not limited)." *Northwest Pipeline GP*, 127 FERC ¶ 61,009 (F.E.R.C. 2009). Thus, I find it is necessary to condemn ten feet on either side of the current thirty-foot right-of-way to create a fifty-foot right-of-way that comports with industry standards.

Finally, I also find Columbia's requests for subjacent support within and under the fifty-foot right of way and for a buffer zone of 310 feet wherein no blasting may occur to be necessary for the continued operation and maintenance of the pipeline.

17

They seek these rights in order to maintain pipeline integrity and to ensure the safety of the line in the future. *See* [ECF No. 5-2, ¶¶ 17–18 (stating in a signed declaration that "the right to subjacent support . . . is necessary to avoid potential for mining subsidence, which presents serious risks to pipeline integrity and public safety" and the buffer sone "is the calculated safe distance[ ] based on the caliber of shots that mining companies typically use")].

I note that Defendants argue that there are disputes of material fact as to the necessity of such rights. [ECF No. 20, at 8–11]. In support, Defendants attached an affidavit of mining engineer David Brafford, who explained how mining cannot occur within 300 feet of a structure without a waiver. [ECF No. 19-1]. As such, Defendants explain that Plaintiff is already in control of whether any blasting occurs. *Id.*; see also [ECF No. 20, at 11]. Further, Defendants state that because they do not have deep mining rights, and current operations are limited to surface mining, the rights sought by Columbia are not necessary and that this factual dispute precludes summary judgment. *Id.* at 10–11.

However, I do not find that there is a dispute of material fact because, absent such evidence of abuse or bad faith, Plaintiff—who has the power of eminent domain—has broad discretion to determine what rights are necessary. *Williams*, 89 F. Supp. at 489. There is nothing in the record that shows Plaintiff has acted arbitrarily, abusively, or in bad faith as it relates to these rights sought in the Permanent Easement. As to an alleged factual dispute, while today's operations may be limited to surface mining, that may not be the case in the future. It follows that

the condemnation is necessary to ensure the future maintenance and operation of the pipeline. *See Panhandle E. Pipe Line Co. v. Tarralbo*, No. CIV-20-751-D, 2022 WL 386099 (W.D. Okla. Feb. 8, 2022) (emphasizing that the statute "expressly authorizes eminent domain to acquire interests in land necessary to *operate* and *maintain* pipelines") (emphasis added) (internal quotations omitted). As such, Plaintiff has demonstrated that the Permanent Easement is necessary for the continued operation and maintenance of the pipeline and, therefore, satisfies the second element required to exercise the power of eminent domain under the NGA.

### 3.  Ability to Acquire by Contract

Finally, to condemn under the NGA, Plaintiff must show it was unable to acquire by contract the rights sought. Defendants argue that Plaintiff cannot condemn what it already has because the previous agreements evidence the existence of a permanent easement. Defendants base this argument on language found in a Northern District of West Virginia case, which provides that if a condemnor has "a contract for the necessary right-of-way, [then] condemnation would not be available." *Equitrans, L.P.*, 145 F. Supp. 3d at 629.

However, courts have found that "whether the parties were able to contract in the past as a general matter, does not answer the statutory question of whether the parties are able to contract concerning the specific rights at issue." *Daubenmire*, 614 F. Supp. 3d at 609 (finding that "the property rights sought by [the gas company] in this condemnation action are different than the property rights in which the parties

once agreed" because previous contracts were for permanent easements and not a fee simple interest).

Other courts have suggested the same. In the Western District of Pennsylvania, a judge issued a report and recommendation stating that the phrase "'cannot acquire by contract, or is unable to agree with the owner of property' must be read in the present tense." *Columbia Gas Transmission, LLC v. An Easement to Construct, Operate & Maintain a 20-Inch Gas Transmission Pipeline Across Properties in Washington Cnty. & Allegheny Cnty., Pa. by MCC Int'l, Inc.*, No. CV 17-1297, 2018 WL 3209426, at *6 (W.D. Pa. Apr. 25, 2018), report and recommendation adopted as modified sub nom. *Columbia Gas Transmission, LLC v. An Easement to Construct, Operate & Maintain a 20-Inch Gas Transmission Pipeline Across Properties in Washington Cnty. & Allegheny Cnty., Pa.*, No. CV 17-1297, 2018 WL 2111239 (W.D. Pa. May 8, 2018). In that case, the report and recommendation noted that the property owner "cited no authority to support the contention that a preexisting easement agreement could constitute an 'objection' to a condemnation proceeding, much less one that would impede the condemnation from being effectuated." *Id.* at *7. Ultimately, in adopting the report and recommendation, the district court did not "reach the question of whether a party may object to [an NGA] eminent domain proceeding based on the existence of a prior agreement governing the same rights" because the facts of that case presented no opportunity for the Court to consider this contention. *Columbia Gas Transmission, LLC*, No. CV 17-1297, 2018 WL 2111239 at *2.

20

Here, I find that the rights sought are different than the rights previously agreed upon in the 1981 Supplemental Agreement or the 1956 Right-of-Way. As previously mentioned, although Plaintiff has a permanent easement for the SM-88 Pipeline to cross the property, the agreement regarding the location of the right-of-way itself contains provisions requiring that Plaintiff move pipeline if there is a reasonably suitable alternative. Thus, the pipeline's location is subject to a condition. Unless the parties reach an agreement allowing the SM-88 Pipeline to stay in its current location permanently—which is what Plaintiff seeks as the ultimate result of this condemnation proceeding—the current rights sought are different than the prior permanent easement agreements.

Plaintiff argues that "[e]ven if the existing easement is taken into consideration, there is no dispute that Columbia does not presently possess the right to subjacent support or that the present right of way is thirty feet, not the requested fifty feet." [ECF No. 24, at 10]. As such, the "the prior easement agreement does not apply to Columbia's condemnation of these property interests." *Id.* I agree. The 1981 Supplemental Agreement does not contemplate the additional rights that Plaintiff is now requesting in the Permanent Easement. Furthermore, Plaintiff "made Defendants a final offer before filing the condemnation action" which exceeded the $3,000 threshold. [ECF No. 5-2, ¶ 19]. *See* 15 U.S.C. § 717f(h).

Although the original easement grants a right-of-way to Plaintiff, Defendants sought to move the location of the right-of-way. Plaintiff has attempted to negotiate with Defendants as to the compensation to be paid to keep the SM-88 Pipeline where

21

it is currently located, but the parties were unable to reach an agreement as to the rights sought in the Permanent Easement. As such, the Plaintiff has satisfied the requirement that it is unable to acquire the rights sought by contract.

Because Plaintiff meets the three requirements to acquire the permanent easement via eminent domain, as set forth in 15 U.S.C. § 717f(h), and there is no dispute as to material fact, I **GRANT** Plaintiff's motion for summary judgment, [ECF No. 5].

### d.   Analysis – Defendants' Motion for Summary Judgment

Next, Defendants seek a summary judgment determination that (1) "Columbia has no right to condemn an easement to the extent it has an existing permanent easement with its pipeline in place under a 1956 Right-of-Way," and (2) the "Natural Gas Act and any condemnation rights do not alter Columbia's contractual obligations as stated under [the] 1981 Supplemental Agreement." [ECF No. 22, at 3]. With regards to first request, I have found that Plaintiff does have a right to condemn despite the prior agreements because the rights sought in the Permanent Easement are different, and Plaintiffs were unable to acquire such rights via contract.

As to the second determination sought, the parties are currently engaged in simultaneous state court litigation. *See* [ECF No. 7-1]. While my ruling may have the practical effect of altering the prior contractual agreements insofar as this ruling grants Plaintiff an unconditional right to keep the pipeline in its current location and extends the right-of-way to fifty feet, the NGA does not prevent claims based on state contract, tort, or property law. *See Am. Energy Corp. v. Texas Eastern Transmission,*

*LP*, 701 F. Supp. 2d 921, 931 (S.D. Ohio 2010). Plaintiff makes clear that Defendants may still prosecute their breach of contract action that arose prior to the condemnation proceeding. [ECF No. 31, at 10 ("Columbia has never claimed that Defendants are precluded from asserting state law claims that allegedly arose prior to this condemnation proceeding.")]. And Defendants may very well still prevail in their state court litigation for the alleged breach of contract, but that question—and any potentially associated award of damages—is not at issue in this case. The question of whether Columbia breached its obligations under the prior agreements, and what the award of damages may be for such alleged breach, is for the state court to answer. I also express no viewpoint as to Plaintiff's argument that the state court proceeding could award duplicative damages. *See* [ECF No. 31, at 10 ("Columbia has requested . . . that the state court proceeding should be stayed because it may award duplicative damages . . . with this condemnation action.")]. Instead, this Court must only determine whether Plaintiff has the right to condemn under the NGA, which it does, and the amount of just compensation to be awarded to Defendants for the taking of the Permanent Easement. Therefore, I **DENY** Defendants' motion for summary judgment because the alleged breach of contract, and the parties' rights under such contract, is before the state court.

## IV.   Motion for Preliminary Injunction for Immediate Possession

### a.  Legal Standard

"[O]nce a district court determines that a gas company has the substantive right to condemn property under the NGA, the court may exercise its equitable power

to grant the remedy of immediate possession through the issuance of a preliminary injunction." *E. Tennessee Nat. Gas Co. v. Sage*, 361 F.3d 808, 828 (4th Cir. 2004). Typically, "[o]nce the right to condemn is established by court order, it follows that the company will be entitled to possession when title is transferred at the end of the case." *Id.* at 825. However, possession may be granted at an earlier stage if "the gas company . . . satisf[ies] the strict requirements for a preliminary injunction." *Id.*

There is a precise analytical framework for determining whether to grant preliminary relief. *See Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). First, the plaintiffs must make a clear showing that they are likely to succeed on the merits. *Mountain Valley Pipeline, LLC v. 6.56 Acres of Land, Owned by Sandra Townes Powell*, 915 F.3d 197, 216 (4th Cir. 2019). Second, the plaintiffs must make a clear showing that they are likely to be irreparably harmed absent preliminary relief. *Id.* Third, the plaintiffs must demonstrate that the balance of equities tips in their favor. *Id.* Finally, the plaintiffs must show that an injunction is in the public interest. *Id.* All four requirements must be satisfied. *Id.* at 215 n.7.

### b. Analysis

First, Plaintiff has satisfied the requirements of 15 U.S.C. § 717f(h) and is authorized to condemn the Permanent Easement. It has therefore succeeded on the merits. *See Sage*, 361 F.3d at 824.

Next, I must consider if Plaintiff will likely suffer irreparable harm in the absence of an injunction. Harm must be more than mere possibility and instead must be likely to occur. *Winter*, 555 U.S. at 22. Economic losses on their own generally do

not constitute irreparable harm based "on the assumption that economic losses are recoverable." *Mountain Valley Pipeline, LLC v. Simmons*, 307 F. Supp. 3d 506, 525 (N.D. W. Va. 2018) (quoting *N.C. Growers' Ass'n, Inc. v. Solis*, 644 F. Supp. 2d 664, 671 (M.D.N.C. 2009)). However, financial harm, when combined with safety and liability concerns, can constitute irreparable harm. *Columbia Gas Transmission, LLC v. 1.01 Acres, More or Less*, 768 F.3d 300, 316 (3d Cir. 2014).

Courts have held "that undue delay, financial burden, construction during winter, and public safety" satisfy this element. *See Columbia Gas Transmission LLC v. 0.85 Acres*, No. CIV. WDQ-14-2288, 2014 WL 4471541, at *6 n. 29 (D. Md. Sept. 8, 2014) (collecting cases). Others have found that encroachments onto the fifty-foot right of way constitutes an immediate threat of irreparable harm. *Columbia Gas Transmission Corp. v. Burke*, 768 F. Supp. 1167 (N.D. W. Va. 1990) (finding a threat to pipeline safety when a party laid foundation for a house nine and a half feet from a pipeline). However, such circumstances that would constitute a likely and immediate threat of irreparable harm are not present here.

First, as the SM-88 Pipeline has already been built, there are no concerns about undue delays in construction or construction during the winter months. Next, I do not find that there is an immediate threat of financial harm. The prior agreement in this case provides that Plaintiff—not Defendants—would be liable for any damage to the SM-88 Pipeline "caused by the operation of underground mines under or adjoining the land on which said easement, right of way and pipe line are located." [ECF No. 1-5, at 3]. This includes damage caused by any subsidence, water damage,

or removal of subjacent support. *Id.* Although Columbia would be responsible in the event that the pipeline is damaged, financial harm is not imminent because there is no ongoing threat to the safety of the pipeline. Defendants currently only have permits for surface mining. And at the injunction hearing, Defendants agreed to "not blast within 300 feet of the pipeline" and to not conduct any activity within the fifty-foot right of way during the pendency of this case. [ECF No. 30, at 37–38]. While any damage to the Pipeline is undoubtedly a safety concern, such concern is only speculative. Columbia has failed to show that Defendants are likely to cause damage to the pipeline pending the determination of just compensation. Should circumstances change, Plaintiff is free to request such relief with the Court again. However, there is no threat of irreparable harm to the SM-88 Pipeline, which makes immediate possession of the Permanent Easement unnecessary. Because there is no likely threat of irreparable harm, I need not consider the other two elements. I **DENY** Plaintiff's Motion for a Preliminary Injunction Seeking Immediate Possession.

## V.   Conclusion

For the foregoing reasons, Plaintiff's Motion for Partial Summary Judgment, [ECF No. 5], is **GRANTED**, and Plaintiff has the right to condemn the Permanent Easement. Defendants' Motion for Partial Summary Judgment, [ECF No. 21], is **DENIED.** Plaintiff's Motion for Preliminary Injunction Seeking Immediate Possession, [ECF No. 7], is also **DENIED**. Upon determination of the full amount of just compensation for the Permanent Easement, and upon payment of compensation, the Court will render a final judgment condemning the Permanent Easement.

The court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

ENTER:        February 20, 2024

JOSEPH R. GOODWIN
UNITED STATES DISTRICT JUDGE